**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **JODY JACKSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.** <u>3:24cv630</u> |
| ) | |
| **EQUIFAX INFORMATION SERVICES, LLC** ) | |
| SERVE:   Corporation Service Company, Reg. Agent ) | |
|             100 Shockoe Slip, FL 2 ) | |
|             Richmond, VA 23219-4100 ) | |
| ) | |
| **TRANS UNION, LLC,** ) | |
| SERVE:   Corporation Service Company, Reg. Agent ) | |
|             100 Shockoe Slip, FL 2 ) | |
|             Richmond, VA 23219-4100 ) | |
| ) | |
| ) | |
| **and** ) | |
| ) | |
| **HL COLLECTIONS, INC.** ) | |
| SERVE:   D. Andrew Heyman, Reg. Agent ) | |
|             10700 Montgomery Rd. ) | |
|             Ste. 230 ) | |
|             Cincinnati, OH 45242 ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Jody Jackson, by counsel, and for her Complaint against Defendants Equifax Information Services, LLC ("Equifax), Trans Union, LLC ("Trans Union"), and HL Collections, Inc. ("HL Collect"), she states as follows:

### PRELIMINARY STATEMENT

1.      This is an action for statutory, actual, and punitive damages, costs, and attorney fees brought to enforce Plaintiff's civil rights pursuant to the Fair Credit Reporting Act, 15

U.S.C. §§ 1681–1681x ("FCRA") and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA").

2.      Equifax, Experian, and Trans Union are the USA's major consumer reporting agencies (hereinafter, these 3 are collectively referred to as the "CRAs", and Equifax and Trans Union are referred to as the "Defendant CRAs" or "CRA Defendants").

3.      The Fair Credit Reporting Act provides federally codified protection of Plaintiff's civil rights with regard to Plaintiff's privacy, Plaintiff's reputation, and Plaintiff's due process rights against defamation. The Fair Credit Reporting Act is part of a larger category of consumer protection statutes designed to arm consumers against discrimination, intrusions upon privacy, and other types of unfair and inequitable treatment. Similar statutes falling under this same umbrella of protection include, for example, the Equal Credit Opportunity Act, the Fair Housing Act, and the Fair Debt Collection Practices Act.

4.      Claims under these federal protections are brought "in connection with any action involving a claim of 'unlawful discrimination'", as described in 26 U.S.C § 62(a)(20). For the purposes of 26 U.S.C § 62(a)(20), the term "unlawful discrimination" is broadly defined in 26 U.S.C § 62(e) to mean "an act that is unlawful under . . .[a]ny provision of Federal, State, or local law, or common law claims permitted under Federal, State, or local law . . . providing for the enforcement of civil rights".

5.      The FCRA demands that CRAs utilize reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b). When a consumer disputes an item of information, the agency must investigate the dispute and, if the information cannot be verified, delete it. 15 U.S.C. § 1681i.

6.      The FCRA's accuracy provision demands that CRAs take actual steps to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities like HL Collect, particularly when a consumer makes a dispute about information reported.

7.      Also, when a consumer like Plaintiff disputes the accuracy of information through the CRAs, those disputes are transmitted to the party furnishing the information. Here, that entity is HL Collect (the "Furnisher"). The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

8.      Plaintiff brings claims under Section 1681e(b) against Equifax and Trans Union because each reported inaccurate account information about Plaintiff regarding a derogatory HL Collect  account. When Plaintiff disputed the inaccuracies, Equifax, and Trans Union did not reasonably investigate, also violating Section 1681i.

9.      The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017). This is particularly true as to how Equifax and Trans Union, and Experian have complied with their now 50-year-old obligation to conduct a meaningful accuracy investigation. Equifax and Trans Union have been repeatedly sued by consumers, sanctioned by regulators, and reprimanded by both District and Appellate courts to do more than an automated parroting of what their customer-creditors instruct. Had the Defendant CRAs followed that advice and heeded those warnings, Plaintiff would not have been harmed.

10.     Likewise, HL Collect violated the FCRA, Section 1681s-2(b), when it received Plaintiff's disputes from the CRAs and failed to reasonably investigate those disputes. Instead, discovery will show all HL Collect did was consult its own records about the account and confirm to the agencies the inaccurate information it was already reporting. HL Collect failed to correct the inaccurate and derogatory reporting on Plaintiff's credit despite receiving ample notice that Plaintiff did not owe the underlying debt.

11.     Lastly, HL Collect violated the FDCPA by attempting to collect an alleged debt from Plaintiff by sending Plaintiff a dunning letter which contained false representations regarding the amount and legal status of a debt. HL Collect committed these violations of the FDCPA despite demonstrating actual knowledge that its assertions regarding the underlying debt were false.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1681p, and 15 U.S.C. § 1692k.

13.     Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to Plaintiff's claims occurred in this District and Division, and Plaintiff works in this District and Division.

## PARTIES

14.     Plaintiff is a natural person residing in the Commonwealth of Virginia, and at all times relevant to the Complaint was a "consumer" as defined by 15 U.S.C. § 1681a(c).

15.     Equifax is a foreign limited liability company authorized to do business in the Commonwealth of Virginia through its registered agent in Richmond, VA.

16.     Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information

concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

17.     Equifax disburses consumer reports to third parties under contract for monetary compensation.

18.     Trans Union is a foreign limited liability company authorized to do business in the Commonwealth of Virginia through its registered agent in Richmond, VA.

19.     Trans Union is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

20.     Trans Union disburses consumer reports to third parties under contract for monetary compensation.

21.     HL Collect is a foreign limited liability company headquartered in Cincinnati, OH. HL Collect describes itself as a "national collection service" that was "founded by an attorney" (http://www.hlcollect.com/, last accessed August 29, 2024). HL Collect regularly does business in Virginia.

22.     HL Collect is a "furnisher" of information as defined and governed by 15 U.S.C. § 1681s-2.

23.     HL Collect is a "debt collector" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6).  Specifically, HL Collect uses instrumentalities of interstate commerce or the mails in its business, the principal purpose of which is the collection of debts. HL Collect regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

owed or due another. No exception to the term "debt collector" applies to exempt HL Collect from regulation under the FDCPA.

## FACTUAL ALLEGATIONS

### *Sections 1681e(b) and 1681i(a) of The Fair Credit Reporting Act Require Substantive Investigations and Prohibit Mere "Parroting" of the CRA Defendants' Creditor-Customers*

24.    "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . In enacting FCRA Congress adopted a variety of measures designed to ensure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

25.    "The . . . FCRA . . . was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and reasonable manner." *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995) (citations omitted). "'These consumer oriented objectives support a liberal construction of the FCRA,' and any interpretation of this remedial statute must reflect those objectives." *Cortez v. Trans Union, LLC,* 617 F.3d 688, 706 (3d Cir. 2010) (quoting *Guimond,* 45 F.3d at 1333).

26.     Over a decade ago, the Third Circuit apprised Trans Union of the high duty of care imposed by Section 1681e(b):

> [T]he distinction between "accuracy" and "maximum possible accuracy" is not nearly as subtle as may at first appear, it is in fact quite dramatic….
>
> There are, of course, inherent dangers in including any information in a credit report that a credit reporting agency cannot confirm is related to a particular consumer. Such information is nearly always "used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for ... credit." 15 U.S.C. § 1681a(d)(1). Allowing a credit agency to include misleading information as cavalierly as Trans Union did here negates the protections Congress was trying to afford consumers and lending institutions involved in credit transactions when it enacted the FCRA….
>
> Congress surely did not intentionally weave an exception into the fabric of the FCRA that would destroy its remedial scheme by allowing a credit reporting agency to escape responsibility for its carelessness whenever misleading information finds its way into a credit report through the agency of a third party….
>
> Trans Union remains responsible for the accuracy in its reports under the FCRA and it cannot escape that responsibility as easily as it suggests here. Congress clearly intended to ensure that credit reporting agencies exercise care when deciding to associate information with a given consumer, and the record clearly supports the jury's determination that Trans Union did not exercise sufficient care here.

*Cortez v. Trans Union, LLC,* 617 F.3d 688, 709-10 (3d Cir. 2010).

27.     Section 1681e(b) sets forth the CRAs' overall du[t]y:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

28.     Section 1681i(a), on the other hand requires much more from a CRA after a consumer has placed it on notice of an inaccuracy through their dispute:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency of the directly… of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file … before the end of the 30-day period[.]

15 U.S.C. § 1681i(a)(1)(A).

29.     Section § 1681i(a) imposes "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

30.     It has long been the law that a CRA, such as Equifax or Trans Union, does not fulfill its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the dispute item.  *See, e.g.*, *Pinner v. Schmidt,* 805 F.2d 1258, 1262 (5th Cir.1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-cv-515-TWT-LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), *report & recommendation adopted,* No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.").

31.     That "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir.1997).  Accordingly, "a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute." *Id.* The Court held that Trans Union's reading of Section 1681i(a) to require only parroting "would require it only to replicate the effort it must undertake in order to comply with § 1681e(b)[,] render[ing] the two sections largely duplicative of each other." *Id.*

32.     As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

357 F.3d 426, 430 (4th Cir. 2004).

33.     Further, as the CRA Defendants are aware, Courts have held that even though the term "investigation" is not used in § 1681e(b), it is clear that Defendants have a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . .." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

34.     It has long been the law – since 1970 in fact – that:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that
> may indicate systematic problems (by virtue of information from consumers, report
> users, from periodic review of its reporting system, or otherwise), it must review
> its procedures for assuring accuracy and take any necessary steps to avoid future
> problems. Similarly, it should establish procedures to avoid reporting information
> from its furnishers that appears implausible or inconsistent.

Federal Trade Commission, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT

(July 2011), at 67.[1]


***Sections 1681s-2(b) of The Fair Credit Reporting Act Also Places a Separate and Intentionally
Redundant Duty of Furnishers Such as HL Collect to Perform a Detailed and Systematic
Investigation of Consumer Dispute***

35.     Today, furnishers such as HL Collect have their own independent duties under the

FCRA, principally those found at 15 U.S.C. § 1681s-2. The duties on furnishers were enacted

almost thirty years ago, in 1996. THE CONSUMER CREDIT REPORTING REFORM ACT OF 1996, Pub.

L. No. 104-208 (1996).

36.     Furnishers' independent duties under the FCRA include independently

investigating consumer disputes by reviewing all relevant information provided by the CRAs.

Further, the furnisher must report the results of this investigation to the CRAs and accurately

correct, update, or delete incorrect information previously reported to the CRAs.

37.     "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic

examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295,

1303 (11th Cir. 2016) (citations omitted). As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or
> systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see
> Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as

---

[1] Available at https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–
reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.

"a searching inquiry").

357 F.3d 426, 430 (4th Cir. 2004).

38.     Additionally, HL Collect has long been aware that a furnisher must fully and accurately report to the CRAs the results of its investigation, including whether or not the consumer disputes such reporting. *Saunders v. Branch Banking and Tr. Co. Of VA*, 526 F.3d 142 (4th Cir. 2008) (Creditor's failure to report disputed nature of debt to all credit reporting agencies (CRAs), after receiving notice of dispute from one CRA, and conducting investigation and verification, was cognizable as violation of Fair Credit Reporting Act's (FCRA) duty to review and update reports for inaccuracies and omissions.)

## Background Information on the Alleged Debt

39.     On January 5, 2022, a judgment was entered against Ms. Jackson, in General District Court for the City of Richmond, in favor of "HRG Management Services, siit Dominion Associates t/a, Aden Park Glenway Green Apartments" ("Aden Park").

40.     On February 11, 2022, Ms. Jackson successfully moved to set aside that judgment and the court scheduled a new trial for April 8, 2022.

41.     On March 22, 2022, Ms. Jackson filed a motion for summary judgment, grounds for defense against the action, counterclaims for amounts that Aden Park had unlawfully obtained from Ms. Jackson, and a counterclaim asserting that Aden Park had violated the Virginia Consumer Protection Act.

42.     The court ruled in favor of Ms. Jackson and found that Aden Park had violated the Virginia Consumer Protection Act. The court dismissed Aden Park's case against Ms. Jackson and ordered Aden Park to pay Ms. Jackson $9,567.60 (plus interest) and $4,500.00 in attorneys fees.

43.     The purported debt that HL Collect is reporting on Ms. Jackson's credit is the same purported debt that Aden Park was attempting to collect from Ms. Jackson in both the judgment that was vacated and the case that Aden Park subsequently lost.

44.     Ms. Jackson does not owe any amount to Aden Park or HL Collect.

45.     On the contrary, the court found that Aden Park owed Ms. Jackson.

46.     Ms. Jackson's judgment against Aden Park was marked as "satisfied" with the court on June 5, 2022.

### *Plaintiff Discovers the CRA Defendants were Reporting the Inaccurate HL Collect Account and Disputes Those Inaccuracies*

47.     In or around February of 2022, Plaintiff discovered HL Collect reporting inaccurate and derogatory information on her credit file with Trans Union.

48.     Specifically, upon information and belief, Trans Union was reporting that Plaintiff owed HL Collect for a debt with Aden Park. This information was inaccurate. Plaintiff had paid all amounts due to HL Collect by September of 2021.

49.     In or around February of 2022, Plaintiff disputed the inaccurate HL Collect information to Trans Union.

50.     Trans Union failed to delete or otherwise correct the inaccurate information in response to Plaintiff's dispute. Instead, Trans Union informed Plaintiff that HL Collect had "verified" the information as accurate.

51.     Plaintiff disputed the inaccurate HL Collect account again to Trans Union in or around June of 2022 and in or around July of 2022. In both of these instances, Trans Union again failed to delete or otherwise correct the inaccurate information, and instead informed Plaintiff that HL Collect had "verified" the information as accurate.

52.     Upon information and belief, Plaintiff discovered in early 2022 that Equifax was inaccurately reporting that Plaintiff owed HL Collect for a debt with Aden Park.

53.     Upon information and belief, Plaintiff disputed this information with Equifax several times, including in or around August of 2022 and in or around September of 2022.

54.     After receiving Plaintiff's disputes, Equifax failed to delete or otherwise correct the inaccurate information it was reporting on her credit regarding HL Collect.

55.     On or around January 18, 2023, Plaintiff obtained a copy of her credit report with Trans Union, which showed that Trans Union was still inaccurately reporting that Plaintiff owed $4,377 to HL Collections for an alleged debt to Aden Park.

56.     Similarly, on or around January 18, 2023, Plaintiff obtained a copy of her credit report with Equifax. That report showed that Equifax was also inaccurately reporting that Plaintiff owed $4,377 to HL Collections for an alleged debt to Aden Park.

57.     Shortly after obtaining copies of her credit files in January of 2023, Plaintiff disputed the inaccurate and derogatory HL Collect information with Equifax and Trans Union.

58.     Following Plaintiff's disputes in January of 2023, Equifax and Trans Union both failed to correct the inaccurate and derogatory information reporting in her respective files with the Defendant CRAs.

59.     On or around December 13, 2023, Plaintiff mailed disputes to Trans Union and Equifax regarding the inaccurate HL Collections information reporting on her credit. In each letter, Plaintiff explained that the matter had been handled in court, she did not owe any money to Aden Park, and that she had obtained a judgment against Aden Park. Plaintiff included her address, her previous address, her social security number, her date of birth, and a copy of her driver's license with each letter. Each letter was notarized.

60.     Upon information and belief, Trans Union received Plaintiff's December 2023 letter and did not delete or otherwise correct the inaccurate and derogatory reporting in response to that dispute.

61.     Upon information and belief, Equifax received Plaintiff's December 2023 letter and did not delete or otherwise correct the inaccurate and derogatory reporting in response to that dispute.

62.     On or around May 7, 2024, Plaintiff mailed disputes to Trans Union and Equifax regarding the inaccurate HL Collections information reporting on her credit. In each letter, Plaintiff explained that the matter had been handled in court, she did not owe any money to Aden Park, and that she had obtained a judgment against Aden Park. Plaintiff included her address, her previous address, her social security number, and her date of birth with each letter. Each letter was notarized.

63.     Plaintiff's May 2024 dispute letter was delivered to Trans Union on May 11, 2024.

64.     Plaintiff's May 2024 dispute letter was delivered to Equifax on May 12, 2024.

65.     In May of, 2024, Trans Union sent "Investigation Results" to Plaintiff. In those "results", Plaintiff learned that HL Collections had "verified" the inaccurate information and Trans Union was still reporting the inaccurate and derogatory collection account on Plaintiff's credit.

66.     Plaintiff did not receive a timely response (or any response) from Equifax following her May 2024 dispute.

67.     Upon information and belief, the Defendants are still reporting the inaccurate and derogatory HL Collect account on Plaintiff's credit files.

### *The CRA Defendants Did Not and Do Not*
### *Conduct Any Investigation of Most Consumer Disputes*

68.    Unknown to Plaintiff until this lawsuit, it has long been the practice of the CRAs to refuse to perform that statutorily mandated FCRA investigation and instead delegate all action in response to consumer disputes to a third-party outsource vendor located overseas.  Equifax and Trans Union use a vendor, previously known as Intelenet Global Services and now as Teleperformance.

69.    Here is how the written mail dispute process actually works: for Equifax, a third-party document processing company in Atlanta maintains several Post Office boxes for receiving consumer mail to Equifax such as disputes, requests for a credit file disclosure, or other communications.  That mailbox company receives consumer disputes and scans them into a batch with other disputes.

70.    Trans Union, on the other hand, receives and scans the mail into batches directly out of its facility in Eastern Pennsylvania.

71.    Teleperformance uses low-wage employees to work quickly to process consumer dispute letters received. The employees skim the letters and select one of a handful of codes from a dropdown menu to best describe the consumer's detailed dispute information in 2 digits.  For example, the most common relevant code is: "01 Not his/her."

72.    Teleperformance agents are not allowed to do any of the following things: contact the consumer; use the telephone or e-mail to investigate; research; contact the furnisher directly; or take longer than 5 minutes per dispute.

73.    The dispute processing agents are not hired to perform actual FCRA investigations. Instead, the agent's sole responsibility is to read consumer dispute letters, select one of a handful of common dispute codes from a drop-down menu, and then click that code.

74.     In fact, the CRAs strongly encourage consumers to make disputes through their online websites.  When consumers do so, the consumer has to click one of just a few available dispute reasons (such as "The balance and/or past due amount are/is incorrect").  The online dispute then is outputted into the "e-Oscar" system described below without ever touching human hands or being read by human eyes at Equifax or Trans Union.  The dispute gets sent to the Defendant CRAs' creditor customers (such as HL Collect) for their sole review and consideration.

75.     Both Equifax and Trans Union have taken the position in other litigation that it has no control over Teleperformance. For example, under oath before another court, Equifax's representative employee testified: "Intelenet has no corporate affiliation with Equifax. Intelenet is not a corporate partner of Equifax. Rather, Intelenet is a company wholly separate from Equifax and is a party to a contract with Equifax wherein Equifax hired Intelenet to assist Equifax with various matters. Neither Mr. Negi nor Mr. Singh [the dispute processing agents] are employees of Equifax." *Miller v. Equifax Info. Serv*., Case No. 4:19-cv-584, ECF 47-1 (M.D. Fla. Sept. 18, 2020). And in its briefing in that same case, Equifax argued, "Courts have determined that Intelenet is a separate legal entity, not controlled by a party."

76.     Trans Union has taken and succeeded with this same position. *See, e.g.*, *Wilcox v. Servis One, Inc*., No. 1:19-cv-02545-RDB (D. Md.), ECF 71 (ruling that Trans Union did not have control or the ability to produce for deposition Indian employees of Intelenet).

77.     Regardless of whether these statements by the CRAs are correct, the credit reporting agencies believe that they cannot direct, control, manage or reliably influence the employees of their respective third-party outsource vendors.

78.     Equifax and Trans Union themselves did not conduct any reinvestigation of Plaintiff's many disputes. Instead, the Defendant CRAs merely caused the disputes to be removed from their control to be saved within a database by an overseas data-processing vendor.

### The CRA Defendants Forwarded Plaintiff's Disputes to HL Collect, Who Did Nothing

79.     In each instance in which Plaintiff disputed the HL Collect account with the Defendant CRAs, the Defendant CRAs forwarded Plaintiff's disputes to HL Collect using an electronic system called "e-Oscar," which is an industry-wide process by which consumer disputes are electronically communicated to furnishers and dispute results back to CRAs.

80.     On information and belief, e-Oscar is also the system by which HL Collect has agreed it will accept consumer disputes from the CRAs.

81.     Each instance in which HL Collect received one of Plaintiff's disputes from a CRA, HL Collect became obligated under the FCRA to investigate that dispute.

82.     Plaintiff's disputes to HL Collect to attempt to have it investigate her complaints went unanswered, as HL Collect continues to report the inaccurate and derogatory account to the Defendant CRAs.

83.     HL Collect failed to reinvestigate Plaintiff's complaints.

84.     Despite HL Collect having actual notice that the court had found in favor of Plaintiff, as evidenced by the information that HL Collect sent with its May 20, 2024 dunning letter, and despite HL Collect receiving multiple disputes regarding the debt, HL Collect continued (and continues still) to report the derogatory information as accurate to the CRAs. Discovery will show that all HL Collect did when supposedly investigating Plaintiff's disputes from the CRAs was consult its own internal account records and simply report back to the CRAs the same inaccurate information Plaintiff was disputing.

85.     On dates better known to Equifax and HL Collect, Equifax furnished Plaintiff's disputes to HL Collect.

86.     On dates better known to Trans Union and HL Collect, Trans Union furnished Plaintiff's disputes to HL Collect.

87.     In violation of § 1681s-2(b)(1)(A) of the FCRA, HL Collect failed to reasonably investigate Plaintiff's disputes that HL Collect received from Equifax and Trans Union.

88.     Defendant HL Collect further violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to correct, delete, or permanently block the account after receiving Plaintiff's disputes from Equifax and Trans Union.

89.     The Defendant CRAs responded to Plaintiff's disputes, claiming the information was reported verified as accurate and the information was updated. This response confirms that the Defendant CRAs communicated Plaintiff's disputes to HL Collect.

90.     Upon information and belief, the Defendant CRAs timely notified HL Collect of Plaintiff's disputes, via e-OSCAR or otherwise, and provided the supporting documents with Plaintiff's disputes.

91.     Alternatively, the Defendant CRAs failed to notify HL Collect of Plaintiff's disputes, and/or failed to provide the supporting documents submitted with Plaintiff's disputes.

92.     Upon information and belief, HL Collect received timely notice of Plaintiff's disputes from Equifax and Trans Union, and the supporting documents submitted with Plaintiff's disputes.

93.     By its actions as described herein, HL Collect furnished and communicated false credit information regarding Plaintiff.

***HL Collect is Still Attempting to Illegally Collect the Debt from Plaintiff***

94.     On or around May 20, 2024, HL Collect sent a dunning letter to Plaintiff in which it illegally asserted that Plaintiff owed $5,088.63 to Aden Park. Exhibit A.

95.     In the letter, an HL Collect agent named "Cyndi" falsely asserted that "On 04/08/2022, a judgment was rendered in the [sic] against Jody Jackson and in favor of our client in the amount of $5,567.93 plus costs current in the amount of $64.00 and interest accumulating at a rate of 6%  from the date of judgment, until paid."

96.     With the dunning letter, the HL Collect agent attached a copy of the warrant in debt that Aden Park had filed against Ms. Jackson, which included the case updates. Exhibit B.

97.     On the face of the warrant in debt, it clearly indicates that judgment was entered in favor of the named defendant, Ms. Jackson.

98.     When HL Collect sent the dunning letter to Plaintiff on May 20, 2024, it had actual knowledge that Ms. Jackson did not owe any money to Aden Park or HL Collect.

99.     HL Collect demonstrated this actual knowledge through the documents that it provided to Plaintiff with its May 20, 2024 letter to Plaintiff.

100.     HL Collect used use false, deceptive, or misleading representations or means in connection with the collection of the alleged Aden Park debt, in violation of 15 U.S.C. § 1692e of the Fair Debt Collection Practices Act.

101.     More specifically, when HL Collect sent a letter to Plaintiff stating that a judgment was rendered against her in favor of Aden Park on 04/08/2022, and that  Plaintiff owed $5,088.63 to Aden Park, HL Collect falsely represented the amount and legal status of a debt, pursuant to 15 U.S.C. § 1692e(2), and used a false representation or deceptive means to attempt to collect a debt from Plaintiff, in violation of 15 U.S.C. § 1692e(10).

*Plaintiff Suffered Actual Harm*

102.    Defendants continued to report the inaccurate and derogatory HL Collect information on Plaintiff's credit reports, even after being notified multiple times that the information is false. Upon information and belief, Defendants are *still* reporting the derogatory HL Collect account on Plaintiff's credit.

103.    Plaintiff attempted to resolve these matters with Defendants and her life was upended by Defendants' failure to correct the inaccurate reporting.

104.    As a result of the inaccurate credit reporting and illegal use of Plaintiff's reports, Plaintiff has suffered damages, including, but not limited to:

    a.   Stress associated with being denied housing;

    b.   The inability to find adequate housing;

    c.   An excessive and unsustainably long commute to work;

    d.   Monies lost by attempting to fix her credit, e.g., communication costs, postage for disputes;

    e.   Loss of time attempting to correct the inaccuracies;

    f.   Stress associated with attempting to resolve this matter; and

    g.   Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life, including but not limited to: extensive and pervasive anxiety and depression, irritability, insomnia, crying spells, nausea, weight changes, muscle aches, worsened high blood pressure, dizziness, headaches, a need for medications, feelings of fear, feelings of embarrassment, loss of concentration, loss of privacy, harm to her relationships, harm to her reputation, harm to her job performance.

### *Defendants' Conduct was Willful*

105.    The FCRA allows for a remedy for a "willful" violation.  A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007). A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

106.    Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

107.    As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years. The language of § 1681e(b) has not changed.  The CRA Defendants' dispute investigation obligations under § 1681i(a) have not changed. The FCRA's caution of Defendants' "grave responsibilities" to ensure accuracy has not changed.

108.    The CRA Defendants have received numerous disputes and other complaints regarding the furnisher at issue in this case—sufficient to require a reasonable company to at least examine or investigate further before blindly accepting further reporting.

109.    The CFPB has maintained a Consumer Complaint database since 2017.  It receives a small percentage of the total consumer credit reporting complaints made nationwide, as many multiples more are made directly to the Defendants, and/or to other government agencies, attorneys, or non-profit organizations.

110.    Each Defendant regularly receives unredacted consumer dispute details from this database.

111.    Since the database began accepting complaints, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Equifax.

112.    Since the database began accepting complaints, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Trans Union.

113.    Further, over 190,000 of the CFPB complaints against Equifax, and more than 160,000 complaints as to Trans Union were based largely on their failure to reasonably investigate consumer disputes.

114.    Just in the last 12 months alone, Equifax, Trans Union and Experian have each been sued by consumers alleging their violation of the FCRA over 2,000 times. Most of these alleged that the Defendant violated § 1681i(a) by failing to conduct a lawful reinvestigation of the consumer's accuracy dispute.  This complaint history has been true for nearly every year over the last decade.

115.    While the thousands of consumer complaints and hundreds of thousands of consumer disputes alone would have put Defendants on notice of the failures of their dispute investigation procedures in ensuring accuracy, numerous Federal District and Circuit Courts have placed the CRA Defendants on notice that they may not merely "parrot" what their creditor-customer tells them if the consumer had provided a substantive and detailed dispute.

116.    The CRA Defendants have had actual notice from numerous other courts that their blind ACDV "parroting" was unlawful. *See, e.g.*, *Centuori v. Experian Info. Sols., Inc*., 431 F. Supp. 2d 1002, 1008 (D. Ariz. 2006) ("'The grave responsibility imposed by [the FCRA] must consist of something more than merely parroting information received from other sources.'"); *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 904 (3d Cir. 2011); *Pourfard v. Equifax Info. Sols. LLC*, 2010 WL 55446 (D. Or. Jan. 7, 2010) ("[T]he caselaw is clear that a reporting

agency does not act reasonably under the FCRA by deferring entirely to another source of information."); *Bradshaw v. BAC Home Loans Servicing, LP*, 816 F. Supp. 2d 1066, 1073-74 (D. Or. 2011)("[Equifax] instead utilized an automated dispute system to verify the accuracy of plaintiffs' account. Many courts, including this one, have concluded that when a CRA is affirmatively on notice that information received from a creditor may be suspect, it is unreasonable as a matter of law for the agency to simply verify the creditor's information through the ACDV process without additional investigation.").

117.    Equifax has even been warned by its home District Court, the Northern District of Georgia, which detailed:

> Equifax argues that the creditor is the party responsible for investigating the dispute, once notified of it by the reporting agency. 15 U.S.C.A. § 1681s-2(b) (1998). According to Equifax, the reporting agency's duty under § 1681i is fulfilled once it forwards the complaint to the creditor, the entity in the best position to undertake an accurate investigation. Under § 1681s-2(b), furnishers of information, such as creditors, have certain duties to investigate consumers' disputes. Yet, this does not end the inquiry, or establish that the reporting agency has no responsibility beyond serving as a conduit for consumers' complaints.

> To the contrary, a credit reporting agency does not conduct a reasonable investigation by deferring entirely to another source of information. "In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers." *Stevenson,* 987 F.2d at 293. The FCRA "places the burden of investigation squarely on" the reporting agency. *Id.*; *see also Henson v. CSC Credit Servs.,* 29 F.3d 280, 286-87 (7th Cir. 1994); *Swoager v. Credit Bureau,* 608 F.Supp. 972, 976 (M.D. Fla.1985).

*Sampson v. Equifax Info. Servs., LLC*, No. CIV.A. CV204-187, 2005 WL 2095092, at *5 (S.D. Ga. Aug. 29, 2005).

118.    Defendants have long had specific notice of these requirements. The seminal Circuit Court decision addressing § 1681i(a) and finding that a CRA does not conduct a reasonable reinvestigation of a consumer's substantive dispute if it merely "parrots" its creditor-customer was

a Trans Union case. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997). Defendants' notice was so substantial that another court instructed the jury in a § 1681i(a) trial:

> In assessing the issue of notice to Trans Union, you are instructed that, on several occasions since 1997, decisions of federal courts have informed . . . that the Fair Credit Reporting Act's Requirement for a reasonable reinvestigation must consist of something more than simply the parroting of information received from other sources and/or that a credit reporting agency does not act reasonably by deferring entirely to another source of information, such as a creditor.

*Mullins v. Equifax Info. Servs., LLC*, CIV. 3:05-cv-888 (E.D. Va. Aug. 27, 2007).

119.    Defendants have also been repeatedly criticized by Federal and state regulators, and consumer groups for the refusal or failure to conduct substantive reinvestigations.

120.    In 2015, a large group of state Attorneys General forced a consent order from the CRA Defendants by which they were required to develop procedures necessary to comply with the FCRA.[2]  The AG Settlement required amongst many changes and mandates that the Defendant comply with § 1681i(a).

121.    The AG Settlement also required the CRA Defendants to conduct significant research and data gathering—even creating a "working group" to address these issues, and to develop special procedures to handle disputes as in this case.  Notwithstanding these requirements, the Defendants did not meaningfully comply with the AG Settlement in these regards.

122.    Defendants are also aware of substantive and detailed criticism by public interest groups about their automated dispute system. For example, in 2009, the National Consumer Law Center ("NCLC"), the organization that publishes the leading legal treatise in this field, also published a scathing research paper detailing the actual process followed by Defendants when a consumer makes a dispute.  That report was updated in 2019. AUTOMATED INJUSTICE REDUX *Ten*

---

[2]     *Available at* https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.

*Years after a Key Report, Consumers Are Still Frustrated Trying to Fix Credit Reporting Errors*,

National Consumer Law Center, February 2019. ("NCLC Report").[3]

123.    The NCLC Report summarized its context:

Ten years ago, the National Consumer Law Center (NCLC) issued Automated Injustice: How a Mechanized Dispute System Frustrates Consumers Seeking to Fix Errors in their Credit Reports, the landmark report on the serious dysfunctions in the American credit reporting system. Since then, the Consumer Financial Protection Bureau (CFPB) began exercising supervision authority over the Big Three credit bureaus (Equifax, Experian and Trans Union), and started the difficult task of compelling them to reform their procedures and practices. A coalition of more than 30 state Attorneys General reached a breakthrough settlement with the credit bureaus in 2015, requiring an array of reforms. Despite these very laudable achievements, the credit bureaus and the companies that supply them with information still have serious problems in ensuring the accuracy of credit reports, affecting millions of American consumers. The dispute process required by the Fair Credit Reporting Act (FCRA) that was intended to fix these problems remains ineffective and biased.

124.    Among many of the Defendants' accuracy failures, the NCLC Report discovered:

- **Insufficient Information Conveyed and Considered in Investigation**.  Credit bureaus use the highly automated e-OSCAR system to convey disputes to furnishers, primarily using shorthand two- or three-digit codes, and at most only a line or two of text in a minority of instances. The credit bureaus use the same four or five codes over 80% of the time.

- **Failure to Transmit Information Submitted by the Consumer**. Credit bureaus failed to send supporting documentation submitted by consumers to furnishers, in clear violation of the FCRA.

- **Perfunctory Credit Bureau Investigations**. Credit bureaus limit the role of their employees who handle disputes, or of the foreign workers employed by their offshore vendors, to little more than selecting these two- or three-digit codes. Workers do not examine documents, contact consumers by phone or email, or exercise any form of human discretion in resolving a dispute.

- **Credit Bureaus Always Side with Furnishers**. Credit bureaus are universally biased in favor of furnishers and against consumers in disputes. In a practice known as "parroting," credit bureaus blindly

---

[3] *Available at* https://www.nclc.org/images/pdf/credit_reports/automated-injustice-redux.pdf.

adopted the response of the furnisher without performing any independent review.

NCLC Report at 6.

125.   Further, HL Collect was well aware of its responsibilities to do a thorough and "searching" investigation under the FCRA, and yet HL Collect deliberately chose to ignore these duties.

126.   HL Collect had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008).

127.   HL Collect had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016).

128.   HL Collect had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Johnson v. MBNA,* 357 F.3d 426 (4th Cir. 2004).

129.   HL Collect had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246 (4th Cir. 2017).

130.   HL Collect had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Bach v. First Union Nat. Bank*, 149 F. App'x 354 (6th Cir. 2005).

131.   Despite the notice and judicial, regulatory, and public interest criticism, Defendants have refused to change their dispute investigation process because it would cost too much money to do so.

132.    Defendants' procedures imposed on Plaintiff an unjustifiably and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

**CLAIMS FOR RELIEF**

**COUNT I:**
**VIOLATIONS OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681e(b)**
*against Equifax and Trans Union*

133.    Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

134.    Equifax and Trans Union each violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files they published and maintained concerning Plaintiff when they reported the inaccurate account information from HL Collect.

135.    As a result of Equifax's and Trans Union's of 15 U.S.C. §1681e(b) Plaintiff suffered actual damages, including but not limited to: homelessness, denial of housing, an excessively long commute, extensive and pervasive anxiety and depression, irritability, insomnia, crying spells, nausea, weight changes, muscle aches, worsened high blood pressure, dizziness, headaches, a need for medications, feelings of fear, feelings of embarrassment, loss of concentration, loss of privacy, harm to her relationships, harm to her reputation, harm to her job performance, lost credit opportunities, lost time attempting to get the errors fixed, money spent on postage for dispute letters.

136.    Further, after Plaintiff's disputes put them on notice of likely inaccuracies and reasons to doubt the correctness of the reporting of their customer HL Collect, Equifax and Trans Union each ignored that information and did not use any human or substantive review to confirm

and verify that its procedures were ensuring maximum possible accuracy of Plaintiff's credit reports.

137.    Equifax and Trans Union each furnished multiple consumer reports to third parties containing the inaccurate collection information and they did so after receiving notice of these inaccuracies.

138.    The violations by Equifax and Trans Union were willful, rendering each of the CRA Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax and Trans Union were negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

139.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Equifax and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT II:**
**VIOLATIONS OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681i(a)**
*against Equifax and Trans Union*

140.    Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

141.    Equifax and Trans Union each violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from each of Plaintiff' credit files.

142.    Equifax and Trans Union each violated 15 U.S.C. § 1681i(a)(2) by its conduct which includes, but is not limited to, failing to send to the furnisher all relevant information that it received with Plaintiff's disputes.

143.    Equifax and Trans Union each violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff as to the Furnisher account.

144.    Equifax and Trans Union each violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff' credit files or modify the item of information upon a lawful reinvestigation.

145.    After receiving Plaintiff's May 2024 dispute letter, Equifax violated 15 U.S.C. § 1681i(a)(6) by failing to provide written notice to Plaintiff of the results of a reinvestigation not

146.    As a result of Equifax's and Trans Union's violations of 15 U.S.C. § 1681i(a), Plaintiff suffered actual damages, including but not limited to: homelessness, denial of housing, an excessively long commute, extensive and pervasive anxiety and depression, irritability, insomnia, crying spells, nausea, weight changes, muscle aches, worsened high blood pressure, dizziness, headaches, a need for medications, feelings of fear, feelings of embarrassment, loss of concentration, loss of privacy, harm to her relationships, harm to her reputation, harm to her job performance, lost credit opportunities, lost time attempting to get the errors fixed, money spent on postage for dispute letters.

147.    The violations by Equifax and Trans Union were willful, rendering each of the CRA Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax and Trans Union were negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

148.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Equifax and Trans Union, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT III
## VIOLATIONS OF FAIR CREDIT REPORTING ACT § 1681s-2(b)(1)(A) & (B)
### *against HL Collect*

149.    Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

150.    Defendant HL Collect violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully conduct a reasonable investigation of Plaintiff's disputes after her disputes were furnished directly to it by Equifax and Trans Union.

151.    Defendant HL Collect violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided when Equifax and Trans Union forwarded Plaintiff's disputes to HL Collect.

152.    As a result of HL Collect's conduct, action, and inaction, Plaintiff suffered damage as alleged above, including by example only and without limitation: homelessness, denial of housing, an excessively long commute, extensive and pervasive anxiety and depression, irritability, insomnia, crying spells, nausea, weight changes, muscle aches, worsened high blood pressure, dizziness, headaches, a need for medications, feelings of fear, feelings of embarrassment, loss of concentration, loss of privacy, harm to her relationships, harm to her reputation, harm to her job performance, lost credit opportunities, lost time attempting to get the errors fixed, money spent on postage for dispute letters.

153.    The violations by HL Collect were willful, rendering HL Collect liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, HL Collect was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

154.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from HL Collect in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT IV**
**VIOLATIONS OF FAIR CREDIT REPORTING ACT § 1681s-2(b)(1)(C) – (D)**
*against HL Collect*

155.    Plaintiff realleges and incorporates all factual allegations set forth in this Complaint.

156.    On one or more occasions within the past two years, by example only and without limitation, HL Collect violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the false information within Plaintiff's credit files with the CRAs in response to Plaintiff's disputes without also including a notation that the debt was disputed and by failing to correctly report results of an accurate investigation to the CRAs.

157.    On information and belief, Plaintiff alleges that HL Collect rarely if ever adds the notation that the account is disputed when it responds to the e-Oscar ACDVs.

158.    Plaintiff's disputes were, at minimum, bona fide.

159.    HL Collect was aware of the *Saunders v. Branch Banking & Trust* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding Plaintiff's disputes.

160.    On information and belief, Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that HL Collect intended its employees or agents to follow.

161.    On information and belief, Plaintiff alleges that HL Collect's employees or agents did not make a mistake in the way they followed HL Collect's procedures when they received, processed and responded to the CRAs' ACDVs and did not include any notation that the account

was disputed.

162.    On information and belief, the Plaintiff alleges that HL Collect has not materially changed its FCRA investigation procedures regarding the notation of a dispute in ACDVs after learning of its failures in this case.

163.    As a result of HL Collect's violations of 15 U.S.C. § 1681s-2(b)(1)(C) - (D), Plaintiff suffered actual damages, as alleged above, including by example only and without limitation: homelessness, denial of housing, an excessively long commute, extensive and pervasive anxiety and depression, irritability, insomnia, crying spells, nausea, weight changes, muscle aches, worsened high blood pressure, dizziness, headaches, a need for medications, feelings of fear, feelings of embarrassment, loss of concentration, loss of privacy, harm to her relationships, harm to her reputation, harm to her job performance, lost credit opportunities, lost time attempting to get the errors fixed, money spent on postage for dispute letters.

164.    The violations by HL Collect were willful, rendering HL Collect liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, HL Collect was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

165.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from HL Collect in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### COUNT V
### VIOLATIONS OF FAIR CREDIT REPORTING ACT § 1681s-2(b)(1)(E)
### *against HL Collect*

166.    Plaintiff realleges and incorporates all factual allegations set forth in this Complaint.

167.    Defendant HL Collect violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete information from Plaintiff's file after receiving Plaintiff's disputes from the CRAs and prior to the commencement of this action. This failure to correct Plaintiff's information resulted from HL Collect's failure to investigate as articulated herein, after HL Collect received notice of Plaintiff's disputes from Equifax and Trans Union.

168.    As a result of HL Collect's violations of 15 U.S.C. § 1681s-2(b)(1)(E), Plaintiff suffered actual damages, as alleged above, including by example only and without limitation: homelessness, denial of housing, an excessively long commute, extensive and pervasive anxiety and depression, irritability, insomnia, crying spells, nausea, weight changes, muscle aches, worsened high blood pressure, dizziness, headaches, a need for medications, feelings of fear, feelings of embarrassment, loss of concentration, loss of privacy, harm to her relationships, harm to her reputation, harm to her job performance, lost credit opportunities, lost time attempting to get the errors fixed, money spent on postage for dispute letters.

169.    The violations by HL Collect were willful, rendering HL Collect liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, HL Collect was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

## COUNT VI
## VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692e
### *against HL Collect*

170.    Plaintiff realleges and incorporates all other factual allegations set forth in this complaint.

171.   When HL Collect sent a letter to Plaintiff stating that a judgment was rendered against her in favor of Aden Park on 04/08/2022, and that Plaintiff owed $5,088.63 to Aden Park, HL Collect violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2) and (10) by falsely representing the amount and legal status of a debt and by using false representations or deceptive means to collect or attempt to collect a debt.

172.   Further, HL Collect communicated information to Equifax and Trans Union, and which was known or which should have been known to be false, each time in the past year that HL Collect falsely reported that Plaintiff owed a balance.

173.   As a result of this conduct (the action and inaction of HL Collect), Plaintiff suffered actual damages, including but not limited to mental and emotional distress and aggravation from HL Collect's repeated attempts to make Plaintiff pay an amount she did not owe.

174.   Plaintiff is entitled to actual and statutory damages against HL Collect, as well as reasonable attorney's fees and costs, pursuant to 15 U.S.C. §1692k.

### JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

### DEMAND FOR RELIEF

Plaintiff therefore respectfully requests that this Court:

(1)   Award Plaintiff actual and punitive damages for violations of the FCRA by Equifax, Trans Union, and HL Collect;

(2)   Award Plaintiff attorney's fees and costs under the FCRA;

(3)   Award Plaintiff actual and statutory damages against HL Collect due to its violations of the Fair Debt Collection Practices Act;

(4)     Award Plaintiff reasonable attorney's fees and costs against HL Collect under the

Fair Debt Collection Practices Act;

(5)     Award Plaintiff pre-judgment and post-judgment interest at the legal rate; and

(6)     Award other relief as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED**.

                              **JODY JACKSON**

                              By:

                              /s/ Leonard A. Bennett
                              Leonard A. Bennett, VSB #37523
                              Mark C. Leffler, VSB #40712
                              CONSUMER LITIGATION ASSOCIATES, P.C.
                              763 J. Clyde Morris Blvd., Suite 1-A
                              Newport News, VA 23601
                              (757) 930-3660 – Telephone
                              (757) 930-3662 – Facsimile
                              Email: lenbennett@clalegal.com
                              Email: mark@clalegal.com

                              Drew D. Sarrett, VSB #81658
                              CONSUMER LITIGATION ASSOCIATES, P.C.
                              626 E. Broad Street, Suite 300
                              Richmond, Virginia 23219
                              Telephone: (804) 905-9900
                              Facsimile: (757) 930-3662
                              Email: drew@clalegal.com

                              *Counsel for Plaintiff*